NELSON B. NIVICA *vs.* WALSH-KAISER COMPANY, INC.

DECEMBER 31, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an appeal by the petitioner from a final decree entered in the superior court denying him compensation under the workmen's compensation act, general laws 1938, chapter 300, for a substantial loss of vision in his right eye, which loss he alleged in his petition to the director of labor was received on February 1, 1945, while he was engaged in the employment of the respondent as a marine electrician. In the petition as originally filed with the director

of labor the manner of receiving this injury was solely stated as "Flashes from welding".

From an examination of the petition it appears that, after the above-quoted words "Flashes from welding", there were added the words "& hitting of head"; and an entry in the margin of the petition shows that this amendment as to the manner of the accident was made in the superior court by leave of the justice before whom the cause was there heard. The making of this change at the request of the petitioner's attorney and with the acquiescence of the respondent's attorney is shown in the transcript of the hearing in the superior court on the merits of the cause. These facts show that until the cause came on for hearing in that court there was no contention by the employee that his eye was injured otherwise than by flashes from welding.

After the cause had been heard by this justice he filed a rescript, in which he discussed the evidence, including the testimony of the petitioner and that of three physicians, who were specialists in diseases of the eye and who testified for the respondent, and that of two physicians who testified for the petitioner, one of whom was a specialist in diseases of the eye. He then stated that not one of the physicians "would give as his opinion either that the present eye condition of the petitioner was probably caused or even that it was probably aggravated by the flashes resulting from welding." He also found that the petitioner's theory that the obstruction of the retinal vein was caused, or at least aggravated, by contact of the head with hard objects, got no support from any of the physicians.

He further stated that the predominant belief held by the physicians appeared to be that the cause of the thrombosis was a systemic disorder; that although a reputable and experienced physician had testified that after an examination he found nothing organically wrong, and although nothing had been found to definitely account for the existing eye condition, nevertheless no physician had apparently felt that he could say that there probably was a connection be-

tween the flashes and that eye condition or the aggravation thereof.

The conclusion of the trial justice was that, upon the evidence presented, the petitioner had not borne the burden of proving, by a fair preponderance of the evidence, a causal connection between any happening arising out of and in the course of his employment and the condition of the right eye; and that therefore the court upon all the evidence submitted was constrained to deny and dismiss the petition.

Upon this decision a decree was entered in which the following facts were found: "1. That the loss of vision in the petitioner's right eye, and any abnormal condition existing in the left eye, are not due to 'welder's flash', or to blows on the head sustained in the course of his work, or to any accident arising out of and in the course of his employment. 2. That the loss of vision in the right eye is due to an obstruction of the retinal vein caused by thrombosis of non-traumatic origin." Thereupon it was ordered, adjudged and decreed that the petition be denied and dismissed. From such decree the petitioner has appealed; and the decisive question for our determination is whether the above-stated findings of fact are supported by any legal evidence in the cause. To determine that question we have examined the evidence.

The salient features of the petitioner's own testimony as to the happening of the alleged accident on February 1, 1945, were substantially as follows: When he was working with the welders, there were flashes every day. Around February 1, 1945, he got three to five flashes from the welders, more intense than others, one being particularly big and bright, and since then he had not been able to see at all with his right eye. He reported this to his lead man and the latter sent him to the field hospital, where he reported the occurrence and was treated for a week, but continued on the same job until February 12, when he was taken off because his eye was getting worse.

He also testified that on February 1, 1945, in the course of his work, he hit his head and notified the field hospital of this hitting; that the field hospital sent him to Dr. Fishbein, the company physician; that on February 8 he went to the latter and was treated by him until February 19; that he told Dr. Fishbein about hitting his head and that the latter advised him to stop working on welding and told him that the cause of his condition could have been his work; that he was then sent to Dr. Grossman, who advised him that his condition could have been aggravated by his work and sent him back to Dr. Fishbein. There was no other evidence that petitioner had hit his head in any way.

The petitioner next testified that the insurance company for the shipyard sent him to Dr. Dowling, who made an examination of his eye and told him that its condition could have been aggravated by his work; that he then went to Dr. Van Benschoten, on or about February 26, 1945, and was still being treated by him; that for quite a period he was treated by Dr. Garside twice a month; and that, ever since his alleged injury, he had had continuous pain around his head and could not see anything with his right eye.

Doctor Garside, a medical doctor, and Dr. Van Benschoten, an eye specialist, testified for the petitioner. Doctor Garside's testimony was to the effect that after a thorough examination he could find nothing organically or systemically wrong with the petitioner. The substance of Dr. Van Benschoten's testimony was that he would not feel that the hitting of petitioner's head would cause the eye condition; but that the flashes might have caused the condition in petitioner's right eye and that the flashes certainly might aggravate a pre-existing condition in his eye. However, when asked in cross-examination if there was a causal connection between the flashes and the injury his answer was: "Yes, it is a possibility. But it is also bordering on a probability."

Doctors Grossman, Dowling and Fishbein, all specialists in diseases of the eye, testified for the respondent. We see no need to relate their testimony in detail. It is sufficient

for the purposes of this case to state that we have carefully examined their testimony and find that the unqualified opinion of each of them was that the flashes did not produce or aggravate the condition existing in petitioner's eye, which was diagnosed as a thrombosis of the retinal vein; and that the cause of that condition, in their opinion, was systemic.

The petitioner argues that the trial justice misconceived the full import of Dr. Van Benschoten's testimony, which petitioner construes to mean that in the opinion of this doctor the flashes were either the probable cause of petitioner's eye condition or at least of its aggravation. Assuming that Dr. Van Benschoten's testimony was susceptible of such interpretation, the only result would be to make a clear conflict in the medical testimony. In view of the findings of fact by the trial justice on the conflicting medical evidence, his conclusions of fact are binding on us under the act. After considering all the evidence in the cause we are of the opinion that the findings of fact by the trial justice are supported by legal evidence.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Hogan & Hogan, Robert A. Coogan,* for petitioner.

*Henry M. Boss, Francis W. Conlan,* for respondent.